UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIANNE S.,[1]

                                           Plaintiff,            Case # 22-CV-261-FPG

v.                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                          Defendant.
_____

## INTRODUCTION

On May 2, 2017, Plaintiff Brianne S. protectively applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"). Tr.[2] 15. On March 8, 2021, this Court granted Plaintiff's motion seeking remand of the Commissioner's unfavorable decision dated January 28, 2019. *See* Tr. 1069-1078. The Appeals Council ("AC") remanded the matter for further proceedings, Tr. 1080-81, and on December 13, 2021, Plaintiff appeared at a hearing before Administrative Law Judge Ronald J. Thomas (the "ALJ"), Tr. 1015. The ALJ issued an unfavorable decision dated February 1, 2022. Tr. 1012. Plaintiff then appealed to this Court. ECF No. 1.[3]

Plaintiff filed a brief requesting remand and Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, Plaintiff's request for remand is GRANTED, Defendant's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

**LEGAL STANDARD**

**I.  District Court Review**

When reviewing a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.  Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

**I.    The ALJ's Decision**

On remand, the ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2015, the alleged onset date.  Tr. 1018.  At step two, the ALJ found that Plaintiff had the following severe impairments:  narcolepsy, degenerative disc disease, undifferentiated polyarthropathy, obesity, gastroparesis, polycystic kidney disease, and bipolar disorder.  *Id.*  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  *Id.* at 1018-20.

The ALJ then determined that Plaintiff maintained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.697(a), with certain limitations.  Tr. 1020.  Specifically, the ALJ concluded that Plaintiff must avoid hazards such as heights, vibration, and dangerous machinery but could drive a personal automobile.  *Id.*  She could also occasionally bend, balance, twist, squat, kneel, crawl, and climb, but could not climb ropes, scaffolds, or ladders.  *Id.*  The ALJ also concluded that Plaintiff could perform simple, routine, repetitious work that does not require teamwork or working closely with the public, but could occasionally interact with coworkers, supervisors, and the public.  *Id.*

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work.  Tr. 1024.  Relying on vocational expert (VE) testimony, the ALJ concluded at step five that there were jobs that existed in significant numbers the national economy that Plaintiff could perform including, for example, document preparer, sorter, and addresser.  Tr. 1024-25.  Accordingly, the ALJ determined that Plaintiff was not disabled.  *Id.*

**II.     Analysis**

Plaintiff argues that remand is required for two reasons: (1) the physical portion of the RFC is not supported by substantial evidence because the ALJ improperly rejected the opinions of Plaintiff's treating providers and (2) the mental portion of Plaintiff's RFC is likewise not supported by substantial evidence and is also the product of legal error because the ALJ failed to properly evaluate the medical opinions in the record.  ECF No. 11 at 3.  She further argues that, in light of these errors, remand for calculation of benefits, not further administrative proceedings, is required. *Id.* at 40-42.  As explained below, the Court concludes that the ALJ committed harmful legal error in failing to properly evaluate the medical opinions in developing the mental portion of Plaintiff's RFC and remand is warranted on this basis alone.  However, Plaintiff has not demonstrated that she is entitled to remand for calculation of benefits.

**A. The Prior Administrative Medical Findings and Medical Opinions**

With respect to Plaintiff's mental RFC, Plaintiff challenges the ALJ's assessment of the prior administrative medical findings and opinions of three sources: state agency examiner John Vigna, Psy. D., consultative examiner Tammy Connell, M.A., and treating psychiatric nurse practitioner Clinton George, D.N.P.  Because, as explained below, the Court concludes that the ALJ's analysis of Dr. Vigna's findings and NP George's opinion warrants remand, the Court examines each of those findings and opinions in turn.

**i.     John Vigna, Psy. D.**

Dr. John Vigna, a state agency examiner, found that Plaintiff was moderately limited in several areas, including the ability "to maintain a regular schedule and be punctual within customary tolerances," "to complete a normal workday and workweek without interruptions from psychologically based symptoms," and "to perform at a consistent pace without an unreasonable

number and length of rest periods." Tr. 69.  Despite these, and other, limitations, Dr. Vigna found that Plaintiff could perform simple, routine tasks in a stable environment.  *Id.* at 69-70.

The ALJ concluded that Dr. Vigna's assessment was "more persuasive" than that of state agency examiner, Diane Fox, M.D., who conducted the physical assessment.  Tr. 1023.  The ALJ appears to have incorporated Dr. Vigna's finding that Plaintiff could perform simple, routine tasks into the RFC.  *See id.* at 1020 ("She is capable of simple routine repetitious work. . . .").  However, the ALJ did not explain his analysis of the supportability and consistency factors as applied to Dr. Vigna's findings.  *See id.* at 1023.

      **ii.**     **Clinton George, D.N.P.**

Psychiatric nurse practitioner ("NP") Clinton George competed a mental medical source statement on September 2, 2021.  Tr. 1921-24.  He identified a diagnosis of major depressive disorder, noting that Plaintiff was responsive to treatment but continued to require medication adjustments.  *Id.* at 1921.  He described her prognosis as requiring regular, ongoing treatment for at least one year.  *Id.*  NP George opined that Plaintiff was unable to meet competitive standards in eleven of the sixteen listed mental abilities and aptitudes needed to do unskilled work.  *See id.* at 1922.  NP George did not complete the portion of the statement that would explain those limitations related to unskilled work that fall within the three most limited categories.  *See id.*  With respect to the five mental abilities and aptitude required to do particular types of jobs, he opined that Plaintiff was either seriously limited or unable to meet competitive standards in all five.  *See id.* at 1923.  He went on to explain that Plaintiff "experiences extreme anxiety" in public spaces.  *Id.*  Further, her depressive symptoms affect her sleep patterns, leading to difficulty focusing and remembering instructions.  *Id.*  According to NP George, Plaintiff "often feels judged, or that she

cannot do anything correctly." *Id.* He further opined that Plaintiff would likely be absent more than four days per month and would likely be off task at least 25% of the time. *Id.*

The ALJ concluded that this opinion was inconsistent with the claimant's own testimony of her daily activities, "including caring for her daughter and performing online shopping." Tr. 1024. The ALJ also noted that accompanying treatment notes indicate "some recent intrusive thoughts," but that the mental status examinations were "normal in contrast to the completed assessment form." *Id.* (citing Tr. 2287-318).

### B. The ALJ's Analysis of the Medical Opinion Evidence and Prior Administrative Findings

Plaintiff argues that the ALJ failed to properly consider the supportability and consistency of the medical opinions as required under the regulations in developing the RFC. ECF No. 11 at 24. As explained below, the Court agrees that the ALJ's failure to adequately explain his analysis of the supportability and consistency factors with respect to the findings of Dr. Vigna and the opinion of NP George is legal error and warrants remand for further administrative proceedings.

"When determining a claimant's RFC, an ALJ must evaluate every medical opinion received, regardless of its source." *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *2 (W.D.N.Y. March 8, 2021) (internal quotation marks and alterations omitted). "Before an ALJ may deny a claimant's application, the ALJ must confront the evidence in the claimant's favor and explain why it was rejected." *Id.* (alterations omitted).

In evaluating claims, like Plaintiff's, filed after March 27, 2017, the ALJ will articulate how persuasive he finds "all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Under these regulations, the ALJ will no longer "defer or give any specific evidentiary weight, including

6

controlling weight to any medical opinion(s) or prior administrative finding(s)." *Id.* §§ 404.1520c(a), 416.920c(a); *see also Brianne S.*, 2021 WL 856909, at *2. Instead, the ALJ will consider the following factors in evaluating a medical opinion's or finding's persuasiveness: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). With respect to supportability, the regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Likewise, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Supportability and consistency are the most important of the five regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ "*will* explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining three factors. *Id.*

An ALJ's failure to explain the supportability and consistency of the medical opinions or prior administrative medical findings in the record is procedural error. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alterations omitted).

Here, other than noting that Dr. Vigna's findings took Plaintiff's mood disorder into account, Tr. 1023, the ALJ did not explicitly discuss what Dr. Vigna "used to support [his findings] and reach [his] ultimate conclusions," *Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *3 (W.D.N.Y. June 27, 2022); *see* Tr. 1023 (no mention of supportability factor). As a result, he failed to properly apply the supportability factor. *See Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *14-15 (S.D.N.Y. Jan. 29, 2021). He likewise failed to apply the consistency factor. *See* Tr. 1023 (no mention of consistency factor). Other than the brief mention of Plaintiff's mood disorder, "[t]he ALJ provided no substantive explanation for [his] conclusion that [Dr. Vigna's] opinion was persuasive." *Raymond M. v. Comm'r of Soc. Sec.*, No. 19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021). The ALJ therefore committed procedural error by failing to explain how he considered the supportability and consistency of Dr. Vigna's prior administrative medical findings. *See Loucks*, 2022 WL 218293, at *2.

The ALJ likewise failed to adequately articulate his analysis of the consistency and supportability factors with respect to NP George's opinion. The ALJ identified two reasons for concluding that NP George's opinion was unpersuasive: (1) the opinion was "inconsistent with [Plaintiff's] own testimony of her daily activities including caring for her daughter and performing online shopping" and (2) the accompanying treatment notes "indicate some recent intrusive thoughts" and the "mental status examinations are normal in contrast to the completed assessment form." Tr. 1024. This analysis is insufficient to satisfy the ALJ's obligations to explain his conclusions regarding the supportability and consistency factors. *See Ricky L.*, 2022 WL 2306965, at *4.

With respect to Plaintiff's daily activities, although the regulations "expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms," *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018), courts have "consistently noted that it is legal error to give excessive weight to a claimant's ability to perform basic daily activities when assessing his or her ability to engage in substantial gainful activity," *Scott v. Berryhill*, No. 16-CV-6780, 2018 WL 6582794, at *6 (W.D.N.Y. 2018) (internal quotation marks and alterations omitted). Here, Plaintiff testified that her daughter goes to her parents' house for at least three hours every day and that her parents help her "financially and physically as much as they can." *Id.* at 46. And while Plaintiff testified that she attended school conferences, her parents "usually take [her daughter] places" when needed. *Id.* Moreover, a social worker comes into her home to help her with daily activities and, in the past, there have been complaints to local authorities about the condition of her home. *Id.* at 47. While it was appropriate to consider Plaintiff's daily activities, the ALJ's characterization of these activities "did not take account of [Plaintiff's] particular mode of living, and did not constitute sufficient reason to reject" NP George's opinions. *Ronald E. v. Kijakazi*, No. 20-CV-1869, 2022 WL 6190240, at *4 (W.D.N.Y. Oct. 7, 2022). The excessive weight that the ALJ gave to Plaintiff's daily activities is compounded by the fact that the ALJ appears to have ignored treatment records that are more consistent with NP George's conclusions. *See e.g.*, Tr. 504 (2017 behavioral health admission due to anxiety, depression, borderline personality disorder), 798 (2018 report to therapist of four mental health hospitalizations), 1407 (2019 reports to behavioral health provider of struggling with basic daily activities), 1475 (reports to NP George of self-harm), 1488 (2021 reports to NP George of, among other things, negative internal narrative, crying, avoidance, selfish ideology, self-isolation, and "shutting down" in social situations). While the ALJ was

entitled to consider Plaintiff's daily activities in analyzing the consistency factor, he was not entitled to overlook this evidence. *See Acosta Cuevas*, 2021 WL 363682, at *15 (ALJ may not ignore or mischaracterize evidence in evaluating consistency factor).

To the extent the ALJ engaged in any supportability analysis of NP George's opinion, that analysis is likewise wanting. The ALJ noted that the accompanying treatment notes "indicate some recent intrusive thoughts" and that "[t]he mental status examinations are normal in contrast to the completed assessment form." Tr. 1024. However, while mental status examinations were generally normal, the same treatment notes also reflect an increase in the dosage of Plaintiff's depression medication from March 2021 through August 2021. *See* Tr. 2298-318. Moreover, rather than "recent intrusive thoughts," the treatment records that the ALJ cites reflect "increased intrusive thoughts," "a new memory that she is perseverating on that has increased her anxiety," and reports of "increased depression." *Id.* at 2297. As explained above, the ALJ also committed legal error by improperly ignoring other treatment records that were both more consistent and supportive of NP George's opinion. *See Acosta Cuevas*, 2021 WL 363682.

Notwithstanding the ALJ's procedural errors, the Court may still affirm the ALJ's decision if "a searching review of the record assures it that the substance of the regulation has not been traversed." *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96) (alterations omitted). That is not the case here, however. For example, the Court notes that Dr. Vigna's findings are inconsistent with the later opinion of NP George, Plaintiff's treating psychiatric nurse practitioner. *Compare* Tr. 69-70 (finding moderate limitations in most areas), *with* Tr. 1921-1923 (finding that Plaintiff unable to meet competitive standards in most areas). While an ALJ no longer gives any particular weight to treating sources, the regulations nevertheless acknowledge that a "medical source may have a better understanding" of a claimant's impairments if he examines the

claimant "than if the medical source only reviews evidence in your folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). Moreover, while a state agency report, such as Dr. Vigna's, can constitute substantial evidence in support of an ALJ's findings, *see Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995), the ALJ's inadequate explanation of the consistency and supportability factors does not permit the Court to "glean" from his decision the reasons for rejecting NP George's opinion in favor of Dr. Vigna's findings. *Cf. Ricky L.*, 2022 WL 2306965, at *4 (remand not warranted where other portions of ALJ's decision made clear how ALJ considered supportability and consistency of opinion).

### C. Harmless Error

Finally, the ALJ's failure to properly evaluate the medical evidence was not harmless, because had the ALJ found NP George's opinion to be persuasive, he may have found Plaintiff disabled. *See Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 352 (S.D.N.Y. 2022). NP George opined, consistently with other opinions in the record, that Plaintiff would likely be absent from work more than four days per month. *See* Tr. 1923; *see also* Tr. 650 (opinion of Jeffrey McGovern, M.D. that Plaintiff would likely be absent from work more than four days per month), 1975 (opinion of Jennifer Wilcox, D.N.P. that Plaintiff would likely be absent from work more than four days per month). "Even though [Plaintiff's] ability to work is a determination reserved for the Commissioner, this opinion is particularly significant," *Navedo*, 616 F. Supp. at 352, because the VE testified that "for simple/routine jobs, employers will tolerate one day per month absence, but no more than that on a consistent basis," Tr. 1064. Had the ALJ credited NP George's opinion as persuasive, "he may have found that there were no jobs in the national economy that [Plaintiff] could perform." *Navedo*, 616 F. Supp. 3d at 352. Accordingly, the ALJ's failure to properly

11

evaluate the medical opinion evidence on this point was not harmless, and remand is warranted. *See id.*

### D. Nature of Remand

Plaintiff seeks remand solely for the calculation of benefits. The Court "declines to do so because [Plaintiff] has not shown that [she] is entitled to benefits based on the record below." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013). Although the Court concludes that the ALJ committed legal error in failing to adequately explain his analysis of the supportability and consistency factors, it cannot conclude that the record "provide[s] persuasive evidence of total disability that [would render] any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000). "The duties of reviewing the record, weighing conflicting evidence, and drawing conclusions as to Plaintiff's RFC fall to the ALJ in the first instance." *McArthur v. Colvin*, No. 13-CV-6369, 2014 WL 5530896, at *8 (W.D.N.Y. Nov. 3, 2014) (citing *Clark v. Comm'r*, 143 F.3d 115, 118 (2d Cir. 1998)). While the Court does not discount the possibility that, on remand, the ALJ may in fact determine that the evidence supports a finding of disability, "it is not the role of this Court to weigh the evidence; that is the exclusive province of the Commissioner." *Kaylor v. Berryhill*, No. 16-CV-281, 2017 WL 4250052, at *3 (W.D.N.Y. Sept. 26, 2017).

Moreover, the Court acknowledges that it has remanded this matter once before, and that a further remand will result in additional delay. However, while delay is a "factor militating against" remand for further proceedings, *see Goins o/b/o J.D.G. v. Berryhill*, No. 16-CV6398, 2017 WL 5019273, at *6 (W.D.N.Y. Nov. 3, 2017), "absent a finding that [Plaintiff] was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

Accordingly, the Court remands this matter for further administrative proceedings. On remand, the ALJ should explicitly discuss the supportability and consistency of Dr. Vigna's findings and properly evaluate the supportability and consistency of NP George's opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's request for remand, ECF No. 11, is GRANTED, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 14, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 26, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York